In the Matter of the Petition of ROBERT E. DOWLING et al., Appellants and Respondents, to Review Chapter 373 of the Laws of 1916, Being the Present Apportionment of the State into Senate and Assembly Districts.

VICTOR F. KNEY, Intervenor, Appellant and Respondent; CHARLES S. WHITMAN, as Governor of the State of New York, et al., Respondents and Appellants.

Constitutional law — senatorial districts — provision of Apportionment Act of 1916 dividing state into fifty-one senatorial districts valid — act invalid as violative of section 4 of article 3 of Constitution providing that no district shall contain excess in population over adjoining district greater than population of block adjoining such districts — constitutional provision as to compactness not violated — rule for allotment of assemblymen approved.

1. The intention of the People to constitutionally limit the number of senators to fifty is expressed as follows: "The senate shall always be composed of fifty members, except that if any county having three or more senators at the time of any apportionment shall be

entitled on such ratio to an additional senator or senators, such additional senator or senators shall be given to such county in addition to the fifty senators, and the whole number of senators shall be increased to that extent." (Const. art. 3, § 4.) The exception therein contained is given for one, and only one purpose, and that is to prevent an increase in the number of senators from the larger counties at the expense of the smaller counties of the state.

2. When, therefore, at the time of any apportionment the number of senators by the ratio, as provided, is determined, all the counties then entitled to three or more senators are to have the number of senators to which they are so entitled compared with the number of senators given to such county by the Constitution of 1894, and if by the ratio any county is entitled to an additional senator or senators such additional senator or senators must be given to such county, and the number of senators in the state must be increased accordingly.

3. The population of the county of Kings increased from 1894 to 1907 so that in accordance with the Constitution it was entitled on the apportionment in 1907 by the prescribed ratio to an additional senator to be elected from that county and the whole number of senators in the state was increased to fifty-one. *Held*, that the Constitution was not violated by the provision of chapter 373 of the Laws of 1916 dividing the state into fifty-one senate districts.

4. The Constitution (Art. 3, § 4) provides that "No town, and no block in a city inclosed by streets or public ways, shall be divided in the formation of senate districts; nor shall any district contain a greater excess in population over an adjoining district in the same county, than the population of a town or block therein adjoining such district. Counties, towns or blocks which, from their location may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens." *Held*, that the provision is mandatory, and that, assuming without deciding that the difference in the number of inhabitants between districts might be so trivial and technical that it should be overlooked and the apportionment upheld, the constitutional provision is so plainly violated in this case that the apportionment cannot be sustained. (*Matter of Sherrill* v. *O'Brien*, 188 N. Y. 185, followed.)

5. The constitutional provision does not provide unqualifiedly for compactness. Senatorial districts are not required to be in the form of geometric figures, as a square or perhaps a circle. Such a provision would be impractical and impossible to carry out. It is expressly provided that the districts shall be as *compact as prac-*

*ticable.* Differences arising from necessity and slight differences in the citizen population of senate districts and the relative weight of slight differences in population in comparison with considerations of compactness or the reverse upon which men of judgment and discretion may fairly differ, are matters belonging distinctly to the legislature and not the judicial branch of the government, and with which this court has no disposition or jurisdiction to interfere.

6. The rule adopted by the legislature and which has been recognized and adhered to by it since the Constitution of 1894 in allotting the number of assemblymen to the several counties of the state is approved.

7. Complications that might arise by setting aside the apportionment now under consideration in the county of New York, or in the counties of New York and Bronx, and sustaining it in the other counties of the state, are such that the act must either be sustained or set aside as a whole. Hence, the apportionment act of 1916 is declared wholly unconstitutional and void.

*Matter of Dowling,* 174 App. Div. 185, reversed.

(Argued July 11, 1916; reargued July 25, 1916; decided July 25, 1916.)

CROSS-APPEALS by all parties to this proceeding, including the intervenor, each from some part of an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 7, 1916, which reversed an order of the New York Special Term dated June 30, 1916, dismissing the petition of Robert E. Dowling and others on the merits, and which order of the Appellate Division also declared the apportionment as set forth in chapter 373 of the Laws of 1916 invalid so far as it provides for fifty-one senators, and which order of the Appellate Division also declared said apportionment invalid so far as it allots two senators instead of one to Westchester county.

The facts, so far as material, are stated in the opinion.

*D-Cady Herrick, Robert L. Luce, Edgar M. Cullen, James A. Foley* and *William A. McQuaid* for petitioners, appellants and respondents. The total number of senators should be fifty and not fifty-one as provided in

said apportionment. (Const. of N. Y. art. 3, §§ 2, 3.) The constitutional provision for compactness of senate districts has been grossly violated in the following three counties: Kings, New York and Westchester. (*Matter of Sherrill* v. *O'Brien*, 188 N. Y. 185; *State ex rel. Attorney-General* v. *Cunningham*, 81 Wis. 440; *State ex rel. Barritt* v. *Hitchcock*, 146 S. W. Rep. 40; *Matter of Timmermann*, 51 Misc. Rep. 192; *People* v. *Thompson*, 155 Ill. 451.) The constitutional provision that a block or blocks in a city, or a town, which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens, has been violated by chapter 373 of the Laws of 1916. (Const. of N. Y. art. 3, § 4.) The constitutional provision for equality of population has been violated by chapter 373 of the Laws of 1916. (Const. of N. Y. art. 3, § 4.)

*William B. Carswell* for intervenor, appellant and respondent. The constitutional rule of "compactness" of senate districts has been wholly disregarded and violated in Kings county. (*Matter of Sherrill* v. *O'Brien*, 188 N. Y. 185; Const. of N. Y. art. 3, § 4.) The allotment and assembly apportionment of members as set out in this act violates the Constitution. (Const. of N. Y. art. 3, § 5.)

*Egburt E. Woodbury, Attorney-General* (*Elon R. Brown, Merton E. Lewis* and *Leonard J. Obermeier* of counsel), for respondents. An "additional senator" apportioned to a county having three or more senators under the Constitution of 1894 remains "additional" to the fifty as long as the county is entitled to such increased representation in the senate. The whole number of senators when increased "to that extent" cannot be reduced as long as the increased representation continues. (Const. of N. Y. art. 3, § 4.) In altering the senate districts formed under the Constitution so as to obtain equality of population, the legislature of 1916 did not abuse its dis-

cretionary power as to compactness. (*People* v. *Carlock*, 198 Ill. 150; *People* v. *Thompson*, 155 Ill. 451; *Smith* v. *Bd. of Supervisors*, 148 N. Y. 187; *Matter of Payne* v. *O'Brien*, 114 App. Div. 890; *Matter of Baird*, 142 N. Y. 523; *Matter of Timmerman*, 100 N. Y. Supp. 57; *State* v. *Cunningham*, 83 Wis. 90.) The mandatory provision of the Constitution for placing "blocks" in senate districts was complied with in the 1916 apportionment. (*Smith* v. *Supervisors*, 148 N. Y. 187; *Jackson* v. *Potter*, 47 N. Y. 375.) The court will not declare the act of 1916 unconstitutional on any trivial or technical grounds or by reason of some clerical mistake. (*Workmen* v. *Worcester*, 118 Mass. 168; *Kelly* v. *Corson*, 8 Wis. 57; *People ex rel. Jessup* v. *Kelly*, 33 Hun, 389; *O'Grady* v. *Barnhisel*, 23 Cal. 287; *People* v. *Richmond*, 25 N. Y. Supp. 144; *State ex rel. Star Pub. Co.* v. *Associated Press*, 159 Mo. 410; *Matter of Whitney*, 142 N. Y. 531; *Bowers* v. *Smith*, 111 Mo. 45; *I. Ry. Co.* v. *Massachusetts*, 207 U. S. 79; *Monclair* v. *Ramsdell*, 107 U. S. 147.)

Chase, J. The Constitution of 1894 divided the state into fifty districts to be called senate districts, numbered from 1 to 50 inclusive. (Constitution State of New York, art. 3, § 3.) It also provides (Article 3, § 4): "An enumeration of the inhabitants of the State shall be taken under the direction of the Secretary of State, during the months of May and June, in the year one thousand nine hundred and five, and in the same months every tenth year thereafter; and the said districts shall be so altered by the Legislature at the first regular session after the return of every enumeration, that each senate district shall contain as nearly as may be an equal number of inhabitants, excluding aliens, and be in as compact form as practicable, and shall remain unaltered until the return of another enumeration, and shall at all times consist of contiguous territory, and no county shall be divided in the formation of a senate district except to make two or

more senate districts wholly in such county. No town, and no block in a city inclosed by streets or public ways, shall be divided in the formation of senate districts; nor shall any district contain a greater excess in population over an adjoining district in the same county, than the population of a town or block therein, adjoining such district. Counties, towns, or blocks which, from their location may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens.

" No county shall have four or more senators unless it shall have a full ratio for each senator. No county shall have more than one-third of all the senators; and no two counties or the territory thereof as now organized, which are adjoining counties, or which are separated only by public waters, shall have more than one-half of all the senators.

" The ratio for apportioning senators shall always be obtained by dividing the number of inhabitants, excluding aliens, by fifty, and the Senate shall always be composed of fifty members, except that if any county having three or more senators at the time of any apportionment shall be entitled on such ratio to an additional senator or senators, such additional senator or senators shall be given to such county in addition to the fifty senators, and the whole number of senators shall be increased to that extent."

It also provides (Article 3, § 5): " The members of the Assembly shall be chosen by single districts and shall be apportioned by the Legislature at the first regular session after the return of every enumeration among the several counties of the State, as nearly as may be according to the number of their respective inhabitants, excluding aliens. Every county heretofore established and separately organized, except the county of Hamilton, shall always be entitled to one member of assembly, * * *. The county of Hamilton shall elect with the county of Fulton, until the population of the county of

Hamilton shall, according to the ratio, entitle it to a member * * *.

"The quotient obtained by dividing the whole number of inhabitants of the State, excluding aliens, by the number of members of assembly, shall be the ratio for apportionment, which shall be made as follows: One member of assembly shall be apportioned to every county, including Fulton and Hamilton as one county, containing less than the ratio and one-half over. Two members shall be apportioned to every other county. The remaining members of assembly shall be apportioned to the counties having more than two ratios according to the number of inhabitants, excluding aliens. Members apportioned on remainders shall be apportioned to the counties having the highest remainders in the order thereof respectively. No county shall have more members of assembly than the county having a greater number of inhabitants, excluding aliens."

In 1906, following the enumeration of the inhabitants of the state in 1905, chapter 431 of the Laws of 1906 was enacted by which the legislature divided the state into fifty-one senate districts, and also apportioned the members of assembly among the several counties of the state. The validity of that act was assailed in the courts and the act was declared wholly unconstitutional and void. (*Matter of Sherrill* v. *O'Brien*, 188 N. Y. 185.)

In 1907 the legislature again reapportioned the state. (Laws of 1907, chap. 727.) Several proceedings were brought to have such apportionment declared unconstitutional and void. The proceedings so brought were either dismissed or the application for relief denied. (*Matter of Reynolds*, 202 N. Y. 430.) The inhabitants of the state were again enumerated in 1915. The legislature of 1916 passed the act now before us for consideration and it became chapter 373 of the Laws of 1916. It is subject to review at the suit of any citizen. (Constitution, article 3, § 5; Laws of 1911, chap. 773.) The constitutional provisions

relating to an apportionment are the same now as they were in 1906 and 1907. Most of the questions that can arise under the act now before us were considered in the *Sherrill* case. So far as the questions were considered in that case it is unnecessary to restate the conclusions then reached.

Two or more important questions of law are presented on this appeal. The first at least of the following two questions was not considered in the *Sherrill* case. 1. Upon the facts disclosed by the record, should the senate be composed of fifty, or fifty-one members ? 2. Did the legislature violate the provisions of the Constitution in forming the senate districts by making one district to " contain a greater excess in population over an adjoining district in the same county than the population of a town or block therein adjoining such district ? "

The intention of the People to limit by Constitution the number of senators to fifty is expressed in language that cannot be misunderstood as follows: " The senate shall *always* be composed of fifty members." That limitation is, however, subject to the exception stated therein. The exception is given for one, and only one purpose, and that is to prevent counties having three or more senators from obtaining a larger number of senators at the expense of the counties of the state not having three or more senators. It is, for that purpose, provided that if any county having three or more senators at the time of any apportionment, is entitled on the ratio prescribed, " to an additional senator or senators, such additional senator or senators shall be given to such county in addition to the fifty senators, and the whole number of senators shall be increased to that extent."

In determining what is intended by an " additional " senator the intent of the People in making an exception to the otherwise clear purpose of always confining the senate to fifty members, must be kept in mind and the meaning of " additional " determined in view of such intent. The provisions of the Constitution that (1) No

county shall have four or more senators unless it shall have a full ratio for each senator, and (2) no county shall have more than one-third of all the senators, and (3) no two counties or the territory thereof as now organized which are adjoining counties or which are separated only by public waters shall have more than one-half of all the senators, and (4) the provision making an exception to the prescribed number of senators all show a purpose and intent to prevent an increase in the number of senators from the larger counties of the state at the expense of the smaller counties of the state. The purpose and intent of the People in making the exception to the prescribed number of senators appears not alone from the Constitution itself, as we have stated, but from the proceedings of the convention, the report of its committee on apportionment, and the address of the convention to the People when the Constitution was submitted to the electors for their consideration and vote. Mr. Lincoln in his Constitutional History of New York (Vol. 3, page 222), says: "Mr. Root, referring to the action of the Convention of 1846, establishing thirty-two senate districts, said that 'since that time increase in population has occurred in the great cities, and the effect of reapportionment, with the number remaining at 32 and giving new senators to the great cities, is to *take away senators from the country;* so that the country districts have been continually enlarging, until they have reached a point where a senator cannot properly represent the whole people of his district. The main object of fixing 50 as the number of senators is to bring the senatorial districts, widely extending, as they are, in the country, back substantially where they were with 32 under the apportionment of 1846. So that *the evil arising from the continual enlargement* of the districts, *because of the continual sending of new senators to the cities, will be removed by the increase of number.'* I have already quoted Mr. Brown's statement that, under the new appor-

tionment, eleven senate districts were identical with eleven under the convention apportionment of 1846. Mr. Root said that fixing the number of senators at 50 puts 'the senatorial districts in such a position that they can be well represented, each one by a senator; and it puts the Senate at such a point that it can properly perform the peculiar functions imposed upon it by our system of government, functions calling for great consideration and requiring in their deliberations a small body of men.'"

A member of the constitutional convention in proposing an amendment to section 4 of article 3 substantially as subsequently adopted, said: "I am going to offer an amendment. And after hearing this debate, and looking over this question thoroughly on both sides, *appreciating fully that there should be some allowance for an increase in the cities, but that at the same time if that increase results in representation at the expense of the country districts, it ought to be limited,* we have unanimously decided to offer to our proposition the following amendment \* \* \*." (Revised Record of Constitutional Convention, vol. 4, p. 37.)

In one of the debates it was said by a minority member: "It provides that when in counties having three or more senators the population increases so that an additional senator may be had, they shall be added to the total number of senators. And I will illustrate; we will assume that ten years from now the state of New York has six millions of people. That divided by fifty, the manner in which the ratio is to be determined, will give 120,000 for each senator. If the city of New York at that time shall have 1,800,000 inhabitants it will be entitled to fifteen members. That is three more than it has under this apportionment. Therefore, *all that can be done will be to give New York three additional senators and add three to the total number of senators in the state. And it will not in any way change the country districts.* In other words, this scheme con-

templates simply that the present apportionment may *always remain*, but you may add on a district when it has sufficient to give it another senator." (Revised Record of Constitutional Convention, vol. 4, p. 648.)

The convention in its address to the People said (Revised Record of Constitutional Convention, vol. 4, p. 1254): "Since 1846 the great increase of population in the cities, entitling them to additional representation in the Senate, has required a corresponding decrease in the representation of the country districts, so that those districts have been constantly enlarged and their representation in the Senate has been constantly decreased. *The object of the proposed increase is to restore the country districts to substantially the same position in which they were in* 1846, *and to provide for the increased representation of the cities by the increase in number, so that there will be effective representation of the country as well as of the city districts.* \* \* \* We believe the provision to be sound in principle, that somewhere in every representative government there should be a recognition of variety of interest and extent of territory as well as of mere numbers united in interest and location.

"Such a departure from the rule of strict numerical representation is recognized by the Constitution of the United States in the organization of the Senate, by the Constitution of the State of Pennsylvania in limiting the representation which the city of Philadelphia may have in its senate to one-sixth of its members, and by the Constitution of the State of Maryland in limiting the representation which the city of Baltimore may have.

"Similar provisions have been adopted by the State of Ohio affecting Cincinnati and Cleveland, the State of Missouri affecting St. Louis, the State of Rhode Island affecting Providence, and by other States of the Union having large cities. It is the rule, rather than the exception, throughout the Union." (Revised Record of Constitutional Convention, vol. 4, pp. 1255, 1256.)

If the contention of the opponents of the act of 1916, so far as it relates to the number and apportionment of senators is concerned, is sustained, then the purpose and intent of the People in enacting the Constitution of 1894 in that respect has failed. The population of the county of Kings increased from 1894 to 1907 so that in accordance with the Constitution it was entitled on the apportionment in 1907 by the prescribed ratio to an additional senator to be elected from that county and the whole number of senators in the state was increased to fifty-one. According to the contention of the opponents of the act of 1916 the county of Kings will retain its additional senator, but such addition must be taken from the number of senators apportioned to the smaller counties and the whole number of senators in the state must be reduced to one less than the number of senators before the reapportionment of 1916.

To further illustrate the effect of the contention, if we assume that the county of Kings had so increased its population between 1894 and 1907 as on the ratio to double the number of senators to which it was then entitled, the number of senators in the state would have been increased to 57, but it would now, with substantially the same relative population as in 1907 be entitled to the increased number of senators and the counties having less than three senators each would lose seven senators. With continued changes in the relative population of the large counties, as compared with the smaller counties of the state, successive reapportionment would result in giving the large counties a maximum number of senators and the counties other than those having three or more senators each would have a minimum number of senators.

It is necessary to determine in connection with the provision in the Constitution for " an additional senator or senators " some specific time from which the computation must be made to ascertain whether an additional senator or senators are permitted within its terms. A construction of the language of the Constitution is essential. It

should not be given a construction that leads to manifestly unintended results. If the Constitution is construed to mean that the additional senator or senators must be determined in comparison with the number of senators provided by the Constitution itself, the purpose and intent of the People of the state will be carried out. If the number of senators by the ratio is not compared with the number of senators as of the time of the adoption of the Constitution itself the purpose and intent of the people will be frustrated. In the construction of a statutory or constitutional provision a meaning should not be given to words that are the subject of construction that will defeat the purpose and intent of the statutory provision or that will make such provision absurd.

The words of the Constitution, namely, "time of any apportionment," are important to put a limit upon all changes in the number and apportionment of senators. They do not necessarily fix the time from which to compute the number of additional senators, if any, to which a county is entitled. When at the time of any apportionment the number of senators by the ratio, as provided, is determined all the counties then entitled to three or more senators are to have the number of senators to which they are so entitled compared with the number of senators given to such county by the Constitution of 1894, and if by the ratio any county is entitled to an additional senator or senators such additional senator or senators must be given to such county, and the number of senators in the state must be increased accordingly. Such interpretation respects all of the provisions of the Constitution.

We do not think that the Constitution was violated in dividing the state into fifty-one senate districts. ·

By the constitutional provision a town and block are each made a unit of population for the purpose of determining equality in the number of inhabitants in senate districts. The language of the Constitution, so far as it relates to towns and blocks, we repeat as follows: "No

town, and no block in a city inclosed by streets or public ways, shall be divided in the formation of senate districts; nor shall any district contain a greater excess in population over an adjoining district in the same county, than the population of a town or block therein adjoining such district. Counties, towns or blocks which, from their location may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens."

The county of New York is by the act in question divided into nine senate districts numbered from 12 to 20 inclusive. The difference in population between the 12th and 13th districts is 1,377; between the 14th and 16th, 1,059; between the 15th and 13th, 516; between the 14th and the 12th, 236, and between the 17th and 15th, 1,016. The block bounded by Green, Forsythe, Broome and Chrystie streets on the line between the twelfth and thirteenth senatorial districts contains 636 inhabitants, and there are blocks between each of the other named senatorial districts on the line between said districts containing a less number of inhabitants than one-half of the difference between the population of the senate districts as stated. The purpose of the convention in providing that no district shall contain a greater excess in population over an adjoining district in the same county than the population of a town or block therein adjoining such district was expressed by a member in discussing the report of the committee relating thereto, as follows: "It was not that the committee believed that it was absolutely essential that there should never be a greater difference than the difference of the population of a block, but it was because the committee perceived that unless they laid down some such *iron clad rule as this* such outrages as the 12th and 13th districts in New York (under the apportionment of 1892) would, from time to time be perpetuated on the State by partisan legislatures." It is said that the differences in the apportion-

ment of 1916 arose by inadvertence and mistake and that they are so slight that they should be disregarded by the court. We are of the opinion that the constitutional provision last quoted is mandatory (*Matter of Sherrill* v. *O'Brien, supra*), and that, assuming without deciding that the difference in the number of inhabitants between districts might be so trivial and technical that it should be overlooked and the apportionment upheld, the constitutional provision is so plainly violated in this case that the apportionment cannot be sustained.

It is also claimed that the constitutional provision in regard to compactness has been violated in the counties of New York, Kings and Westchester. In Kings county the districts were so evenly divided in number of inhabitants, excepting aliens, that the district having the largest number of inhabitants has but fifty-nine inhabitants more than the district with the smallest number of inhabitants. The constitutional provision does not provide unqualifiedly for compactness. Senatorial districts are not required to be in the form of geometric figures, as a square or perhaps a circle. Such a provision would be impractical and impossible to carry out. It is expressly provided that the districts shall be as *compact as practicable.* This permits of a consideration in good faith of existing lines, topography, means of transportation, etc.

The requirement that we have just been considering which makes a town or block a unit of population tends to irregularity in the shape of senate districts, particularly as shown upon a map. It does not appear in this case that the form of the districts in either New York, Kings or Westchester counties was adopted for partisan or personal advantage. Differences arising from necessity and slight differences in the citizen population of senate districts and the relative weight of slight differences in population in comparison with considerations of compactness or the reverse upon which men of judgment and discretion may fairly differ, are matters belong-

ing distinctly to the legislature and not the judicial branch of the government, and with which this court has no disposition or jurisdiction to interfere. (*Matter of Sherrill* v. *O'Brien, supra; Matter of Smith* v. *Board of Supervisors, St. Lawrence Co.,* 148 N. Y. 187.)

While some of the districts in the counties named may be subject to criticism with respect to compactness, we are unable to say from a mere inspection of the maps that the constitutional provision in regard to compactness has been violated.

We approve of the rule adopted by the legislature and which has been recognized and adhered to by it since the Constitution of 1894 in allotting the number of assemblymen to the several counties of the state.

We do not intend by this decision to hold that it is not possible for the courts at any time to set aside an act of apportionment in part and to sustain it in part. Complications that might arise by setting aside the apportionment now under consideration in the county of New York, or in the counties of New York and Bronx, and sustaining it in the other counties of the state, are such that counsel have agreed with the court that the act must either be sustained or set aside as a whole.

The order of the Appellate Division should be reversed and the apportionment act of 1916 declared unconstitutional and void.

Unless the legislature is convened and pass a new apportionment act, the conduct of the approaching election will have to be controlled by pre-existing laws so far as they are applicable.

The application of the petitioners is granted, without costs to either party in this court or in the Appellate Division.

Hiscock, Cardozo and Pound, JJ., concur with Chase, J.; Willard Bartlett, Ch. J., Cuddeback and Hogan, JJ., concur in result.

Ordered accordingly.