In the Matter of the Petition of DAVID A. FAY to review Chapter 359 of the Laws of 1943 (Apportionment Act of 1943).

In the Matter of the Petition of GEORGE W. THOMPSON to review Chapter 359 of the Laws of 1943 (Apportionment Act of 1943).

In the Matter of the Petition of STEPHEN J. WOJTKOWIAK to review Chapter 359 of the Laws of 1943 (Apportionment Act of 1943).

THOMAS E. DEWEY, as Governor of the State of New York, THOMAS W. WALLACE, as Lieutenant Governor and as President of the Senate, OSWALD D. HECK, as Speaker of the Assembly, and NATHANIEL L. GOLDSTEIN, as Attorney-General, Respondents.

Supreme Court, Albany County, June 3, 1943.

*Saul I. Radin* for David A. Fay, petitioner.

*John J. O'Connor* for George W. Thompson, petitioner.

*Henry Epstein* for Stephen J. Wojtkowiak, petitioner.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown and Orrin G. Judd* of counsel), for respondents.

RUSSELL, J. Upon the return of orders to show cause in the above-entitled proceedings the petitioners ask for an order or judgment to be made and entered granting the prayer of said petitioners that the present apportionment of the State into senate and assembly districts, as made by chapter 359 of the Laws of 1943, be reviewed and that said chapter 359 of the Laws of 1943 be declared unconstitutional and void upon the ground that the number of senate districts or senators fixed by said apportionment exceeds the limit prescribed by article III of the New York State Constitution; and/or that said apportionment violates the provisions of article III of the State Constitution requiring that each State senate district shall contain as nearly as may be an equal number of inhabitants, excluding aliens, and asking for other and further relief as the court shall deem just and proper.

The Fay order to show cause, in addition to the above orders to show cause, also asks that the allotment of assemblymen among the counties of the State of New York be declared constitutional.

The principal question raised by the petitions and the answers and return is whether the State should be divided into fifty-six senate districts as has been done by the Act under review, or into fifty-two or fifty-four districts, as the petitioner Fay contends, or into fifty-three or fifty-two districts, as the petitioner Wojtkowiak contends. The petitioner Thompson also raises the issue of compactness and of excess population in adjoining districts in a county.

There are no disputed questions of fact, as all of the material facts are matters of public record.

The present reapportionment was made upon the basis of the 1940 Federal census.

The principal parts of section 4 of article III of the Constitution which are at issue and which have created a division of thought by interpretation are as follows: " The ratio for apportioning senators shall always be obtained by dividing the number of inhabitants, excluding aliens, by fifty, and the senate shall always be composed of fifty members, except that if any county having three or more senators at the time of any apportionment shall be entitled on such ratio to an additional senator or senators, such additional senator or senators shall be given to such county in addition to the fifty senators, and the whole number of senators shall be increased to that extent."

" No county shall have four or more senators unless it shall have a full ratio for each senator. No county shall have more than one-third of all the senators; and no two counties or the territory thereof as now organized, which are adjoining counties, or which are separated only by public waters, shall have more than one-half of all the senators."

" * * * Such districts shall be so readjusted or altered that each senate district shall contain as nearly as may be an equal number of inhabitants, excluding aliens, and be in as compact form as practicable, and shall remain unaltered until the first year of the next decade as above defined, and shall at all times consist of contiguous territory, and no county shall be divided in the formation of a senate district except to make two or more senate districts wholly in such county. No town, and no block in a city inclosed by streets or public ways, shall be divided in the formation of senate districts; nor shall any district contain a greater excess in population over an adjoining district in the same county, than the population of a town or block therein adjoining such district. Counties, towns or blocks which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens."

The total citizen population as appears from the 1940 Federal census is 12,401,329. This number, divided by fifty pursuant to the Constitutional requirement, produces a ratio of 248,027, which is commonly referred to as the first ratio. The counties to which the first ratio is applied are Kings, New York, Bronx, Queens and Erie, which have a total population of 7,233,558 of the State's population. This, divided by the full ratio, resulted in twenty-seven senatorial districts. The remaining population of the State, or 5,167,771, was apportioned to fifty-seven counties. This part of the State's population divided by the remaining number of senators, or twenty-nine senators, produces a ratio of 178,199. This ratio is commonly known as the second ratio.

The number of senators to be added to each county and to the total number of senators in the State is dependent upon the first ratio. The correct reapportionment for the purpose of arriving at the total number of senators in the State is dependent upon the construction given to the exception clause as found in section 4 of article III of the Constitution, which reads as follows: " * * * Except that if any county having three or more senators at the time of any apportionment shall be entitled on such ratio to an additional senator or senators, such additional senator or senators shall be given to such county in addition to the fifty senators, and the whole number of senators shall be increased to that extent." It is also dependent upon whether or not the comparison is made between the number of senators which a county would get by the present reapportionment with some preceding reapportionment, or with the number apportioned to the county by the Constitution of 1894 as authorized by the comparison method in *Matter of Dowling* (219 N. Y. 44).

Before the Legislature passed the 1943 Act there were four counties which fell into the class of three or more senators. The counties were Kings, New York, Bronx and Erie, the apportionment as to these counties being subject to the full ratio of 248,027. After the apportionment was made by the Act of 1943 there were five counties which fell into the exception class, Queens being the fifth.

In construing the exception clause and also the time of comparison, one should keep in mind the intent of the framers of the Constitution as to the total number of senators in the State.

The 1894 Convention increased the total number of senators from thirty-two under the apportionment of 1846 to fifty for the purpose of equalizing representation throughout the State, and

at that time Mr. Elihu Root, who was a delegate to the 1894 Convention, said in referring to the fifty: '' It puts the Senate at such a point that it can properly perform the peculiar functions imposed upon it by our system of government, functions calling for great consideration and requiring in their deliberations a small body of men.'' (Revised Record of the Constitutional Convention of 1894, vol. 3, p. 1211.)

It is incumbent upon one to recognize the vast changes in population since 1894 and also the formations of counties out of other counties. This is evidently what Judge CHASE had in mind when he said, '' It is difficult and perhaps impossible to state rules by which future apportionments can be measured.'' (*Matter of Sherrill* v. *O'Brien*, 188 N. Y. 211.)

The Legislature in passing the 1943 Act construed the word '' having '' in the exception clause relative to arriving at the total number of senators, as meaning the time when the ratio shall have been applied and when the number of senate districts which the counties will have has been ascertained on the reapportionment. In other words, the Legislature has construed it to mean '' after '' the reapportionment was made. It also compared the number of senators a county had after the reapportionment with the number such county had as of 1894.

For the purpose of clarity I shall depart from the usual form of a memorandum and represent by table the result as follows:

| Counties | 1894 | 1943 Reapportionment | | Gain on Total |
|---|---|---|---|---|
| Kings............................ | 7 | | 9 | 2 |
| New York and Bronx as New York... | 12 | New York 6 ⎱ One | | |
| | | Bronx 5 ⎰ County 11 | | 0 |
| Queens and Nassau as Queens........ | 1 | Queens 4 ⎱ One | | |
| | | Nassau 1 ⎰ County 5 | | 4 |
| Erie............................. | 3 | | 3 | 0 |
| | | Total...................... | | 6 |
| | | 6 added to 50 makes total number in the State............. | | 56 |

It is apparent that Queens County in 1894 embraced the territory now comprised of the Counties of Queens and Nassau. Nassau County has a population of 383,266. The Legislature, in passing the Act of 1943, considered Nassau on a full ratio and entitled to one senator, and also by considering it a part of Queens County in 1894 it made a total of five for the whole territory of Queens and Nassau based on full ratio. This gave to Queens an increase of four and added four to the total of

fifty. After this territorial calculation, Queens and Nassau were separated and Queens given its allotment of four senators. Nassau was also used in a dual capacity. For after the Legislature used the territory of Nassau for an increased number, it also separated it and on its ratio allotment gave it another senator, making two for Nassau. This seems inconsistent and not within the intent of the framers of the Constitution. The use of the territorial extent of a county for the purpose of comparison and also for the acquisition of an additional senator or senators by the Act of 1943 was evidently founded upon the words " or the territory thereof as now organized." (N. Y. Const. art. III, § 4.) This phrase is used only for the purpose of limiting the number of senators in certain counties and not for the purpose of calculating the additional senator or senators to which a county is entitled, nor for the purpose of ascertaining to what extent the whole number of the State is increased. If this method were used with respect to Queens and Nassau Counties it also should have been used with respect to the formations of other counties. In 1895 after the 1894 constitutional apportionment, part of Westchester County was added to New York County, now County of Bronx.

In 1914 part of New York was formed into Bronx County. In 1915 part of Queens County was annexed to Kings County. In 1925 part of Kings was added to Queens. In 1928 part of Queens was annexed to Nassau.

It is true that these formations of a part of one county with another county took place after 1894. Some were made before 1916 when *Matter of Dowling* (219 N. Y. 44) was decided, and some after.

However, the principle of recognizing the territorial extent of counties in 1894, in order to obtain the added senator or senators by comparison, was established.

Since so many different formations of counties have taken place, it is clear that the adherence to such a principle would lead to a wilderness of entanglements from which one could not extricate himself. A county should be the county as it is at the time of the reapportionment. This would then eliminate future confusion and would comply with the plain language of the Constitution (art. III, § 4) which says: " * * * if any county having three or more senators at the time of any apportionment. * * * "

I feel that the basis the Legislature has relied upon, both as to the construction of the word " having " and the county comparison with a county of 1894, would ultimately result in an

excessive increase to the total number. For instance: Assuming at the next reapportionment, which under the Constitution would be had in ten years (art. III, § 4), that Kings County were apportioned eleven, an increase of two over its present apportionment, then the eleven compared with the seven in 1894 would result in an increase of four, making a total of fifty-four; and assuming that Queens by the next reapportionment increases two, making seven, and this seven is compared with one in 1894, there would be an increase of six. Under this assumption the increase of Kings and Queens to be added to the total of fifty would make sixty senators for the State.

I mention these two counties because it is clear that there is a rapid increase in population in those counties.

It appears that at the time the present apportionment was made Kings had an excess over its ratio of nine senators of 175,241, and Queens over its ratio of four had an excess of 211,644, but neither county had sufficient for another senator.

However, by comparing the number of senators a county has on the last apportionment with the number it had on a previous apportionment, the result is that the increase to a county is the same as the increase to the total and consequently more clearly coincides with the meaning of the words of the Constitution (art. III, § 4) which provides '' such additional senator or senators shall be given to such county in addition to the fifty senators, and the whole number of senators shall be increased to that extent.''

The petitioner Stephen J. Wojtkowiak contends that the exception clause '' if any county having three or more senators at the time of any apportionment '' means '' before '' the reapportionment takes place, and he also contends that the comparison of the number of senators apportioned to a county should be made with the number of senators said county had on the last previous apportionment. The following table shows the result of the basis upon which said petitioner relies:

| Counties | Before Reapportionment | After Reapportionment | Loss | Gain on Total |
|---|---|---|---|---|
| Kings | 8 | 9 | | 1 |
| New York | 9 | 6 | 3 | 0 |
| Bronx | 3 | 5 | | 2 |
| Queens | 2 | 4 | | 0 |
| Erie | 3 | 3 | | 0 |
| Total | | | | 3 |

Increase of 3, added to 50, makes State's total....... 53

It is apparent that all of the counties, except Queens, before the apportionment was made were in the class of three or more senators, and that Kings and Bronx in that class were the only ones which resulted in an increase to the total of fifty, thereby making the total of the State fifty-three. However, Queens is entitled to its four senators, because it has a full ratio for each senator, but it does not come in the class for an increase of the total, since it did not have three or more senators before the time of the reapportionment.

It has been fundamentally recognized that, for a county to have an additional senator or senators on the full ratio for the purpose of increasing the total number of senators, it had to be in the class of three or more senators before the reapportionment took place.

Lincoln's Constitutional History of New York, volume 4, page 345, states as follows: " The last sentence, authorizing an increase in the number of senators above fifty, is at present applicable only to the counties of New York, Kings, and Erie. If the senate ratio for the whole state under the enumeration of 1905, or any subsequent enumeration, should show that a county in this class is entitled to an additional senator, the number of senate districts in that county will be increased accordingly, and the whole number of senators will be correspondingly increased."

The Constitution very wisely checks the large metropolitan counties from overcoming the rural counties in representation of senators by stating (art. III, § 4): " No county shall have more than one-third of all the senators; and no two counties or the territory thereof as now organized, which are adjoining counties, or which are separated only by public waters, shall have more than one-half of all the senators."

In the phrase " and no two counties or the territory thereof as now recognized," the statement " or the territory thereof as now organized," evidently had application to the year 1894. As the entire sentence is written, it is also necessary to read " and no two counties which are adjoining counties, or which are separated only by public waters, shall have more than one-half of all the senators." This provision applies not only to the time when the Constitution was adopted in 1894 but to the present and future.

A check is also provided for large counties whose senators are apportioned on the second ratio, such as Westchester. Westchester was apportioned three by the Act of 1943. But Westchester cannot be used for an added senator or senators to the

total number unless it is apportioned on a full ratio, or first ratio of 248,027, and acquires the class of "three or more senators."

The petitioner George W. Thompson attacks the apportionment made by the Act of 1943 on the ground that the variances in the citizen population of the senate districts are so great as to violate the provisions of the Constitution as to equality. Although some variances do appear, nevertheless, they are not so serious as to affect the equality as a whole and compel this court to declare the Act as invalid on that ground. It is "only when the violation of the constitutional mandate is clear and certain" that the courts will interfere. (Judge CULLEN in concurring opinion in *Matter of Sherrill* v. *O'Brien*, 188 N. Y. 185 at p. 212.)

The apportionment of assembly districts is also questioned by the same petitioner. His contention being mainly that the adoption of the "Brown Formula" for apportionment of assemblymen is unconstitutional.

It is evident that in the allotment of assemblymen among the counties made by chapter 359 of the Laws of 1943, said allotment is made pursuant to what is deemed the "Brown Formula." This formula was sustained in *Matter of Dowling* (219 N. Y. 44). It, therefore, appears that the apportionment of the Assembly was correct, but inasmuch as a newly created senate district is the basis for assembly apportionment, a change might necessarily have to be made in order to comply with the court's conclusion as to senate districts.

I am, therefore, of the opinion that the construction to be given to the words "any county having three or more senators at the time of any apportionment" means having three or more senators "before" the apportionment. It is also my conclusion that the number of senators which a county in the class of "three or more senators at the time of any apportionment" has after the reapportionment should be compared with the number it had before the reapportionment. The total number of senators should, therefore, be fifty-three, as contended by the petitioner Wojtkowiak.

The apportionments this court has considered to determine the number of senators to be added to different counties and the number to be added to the total number of senators of the State were mainly for the purpose of arriving at a conclusion as to either the validity or invalidity of chapter 359 of the Laws of 1943. In the court's conclusion it might appear that its determination was a suggestion to the Legislature. It might

be construed as such, but the Legislature is at liberty either to accept or reject such suggestion.

I feel that the constructions arrived at in the conclusion not only keep the number of senators nearer to the number of fifty, as was intended by the framers of the Constitution, but also gives an equitable distribution of senators throughout the State according to population and territory.

Due to the great increase in population in several senatorial districts, it is imperative that a reapportionment be made but, when made, it should be within the intent of the Constitution.

If radical changes should take place in the future so as to alter the equality of senators throughout the State, there is no reason why an amendment to the Constitution could not be submitted to the People.

The Reapportionment Law enacted by chapter 359 of the Laws of 1943 is, therefore, invalid and unconstitutional.

Submit order in accordance with this memorandum.