### DANCY et al. v. PEEBLY et al.

No. 19589. Opinion Filed July 28, 1928.

(Syllabus.)

1. **Elections—Electors Entitled to Direct Vote for Opposing Candidates in Primary—Legislature Without Power to Substitute Such Right.**

By virtue of section 5, art. 3 of the Con-

stitution of this state, the electors of political parties are entitled to cast their votes in a direct manner for their choice between opposing candidates for the nomination of a particular elective office, and the Legislature is without power to substitute or delegate the right of such choice to any person, body or convention.

2. Same—Power of Legislature to Provide for Omission of Names of Unopposed Candidates from Primary Ballot.

Where it is made to appear that a candidate for party nomination to an elective office within the state is without opposition, the Legislature may provide a method of placing the name of such unopposed candidate on the ballot for the ensuing general election as the nominee of his party without the necessity of submitting the name of such unopposed candidate in the primary to the electors of such political party, as neither the candidate nor the electors are in any manner affected differently by the result of the procedure.

3. Same—Ministerial Duty of Central Committees of Political Parties Under Statute.

Under section 2, ch. 98, Session Laws 1927, no choice or selection of candidate is cast upon the central committees of the respective political parties. Under said act the duties of such committees are ministerial only so far as they relate to an unopposed candidate for the nomination by a political party to a particular office, and in the event that such central committee fails to act thereon, the unopposed candidate may obtain proper relief in court.

4. Same—All Classes of Elective Offices Included in Statute.

Section 2, ch. 98, Session Laws 1927, when read in connection with the statutes in force at the time of its adoption, includes every class of elective offices within the state in which it was necessary to obtain a party primary nomination prior to the passage of said section 2, ch. 98, supra.

5. Same—Right of State to Regulate Primary Congressional Nominations.

The state may enact primary laws governing the party nominations of candidates for membership in the federal Congress.

Original action by Ben B. Dancy and others against R. L. Peebly and others for writ of mandamus. Writ denied.

B. D. Shear and D. S. Levy, for plaintiffs.

Edwin Dabney, Atty. Gen., Wm. L. Murphy, Asst. Atty. Gen., J. K. Wright, Co. Atty., and W. F. Smith, Asst. Co. Atty., for defendants.

LESTER, J. The plaintiffs have filed in this court an original action praying that this court by writ of mandamus compel the county election board of Oklahoma county, Okla., to include and have printed upon the Republican primary ballots in said Oklahoma county, Okla., at the ensuing August primary, the names of each of said plaintiffs as candidates for the primary nomination for the particular office sought by each of said plaintiffs.

The plaintiffs allege for their cause of action:

"That they and each of them are residents of Oklahoma county, state of Oklahoma; that they are duly qualified electors therein, and have been such residents and electors for more than two years last past. That each of said plaintiffs are duly qualified under the laws of the state of Oklahoma to seek and to hold the political and official positions hereinafter sought by them. That all of said plaintiffs are members of the Republican party, and are duly registered and qualified voters under the laws of the state of Oklahoma.

"That each of said plaintiffs has in full requirement of the primary election laws of the state of Oklahoma filed his or her petition with the county election board of Oklahoma county, said state, to have his or her name printed upon the proper political party ticket in the primary election to be held August 7, 1928, to be held within said county and state for the following offices, to wit:

"Plaintiff Ben B. Dancy for the Republican nominee for sheriff of Oklahoma county, in said state.

"Plaintiff Paul Huston for the Republican nominee for county treasurer of Oklahoma county in said state.

"Plaintiff Henry L. Goddard for the Republican nominee for judge of the county court of Oklahoma county, in said state.

"Plaintiff Mabel Murray for the Republican nominee for superintendent of schools of said county of Oklahoma, in said state.

"That all of said nominating petitions for such offices were duly filed by plaintiffs with the secretary of the election board, and were so filed within the time and in the manner provided by the primary election laws of said state.

"Plaintiffs further allege that each and every one of them are unopposed by any other candidate within the Republican party for the office sought by each of said plaintiffs, respectively, and that the period for filing nominating petitions on the part of any other Republicans for such offices has long since past. That the Republican county central committee of said Oklahoma coun-

ty did, within ten days after the close of the filing period for each of the offices herein sought by these plaintiffs, meet and declare each of the plaintiffs herein to be unopposed candidates and to be the nominees of the Republican party for the office for which he or she had respectively filed, and that said Republican county central committee did forthwith file such declaration in behalf of said Republican party with the county election board of Oklahoma county, state of Oklahoma. That the secretary of said county election board for Oklahoma county, said state, did receive such declaration and the county election board of Oklahoma county compared the same with its filing for said positions sought by these plaintiffs and found the same to be accurate and correct. That said county election board in and for Oklahoma county thereafter declared each of these plaintiffs to be the Republican nominee for the office for which each of these plaintiffs had filed, and further declared that they were unopposed by any other person within said Republican party for the office so sought. That said county election board and each member thereof, have refused to include and have printed upon the Republican primary election ballot to be submitted to the voters of Oklahoma county on August 7, 1928, the names of each of the plaintiffs herein, and will refuse unless a writ of mandamus be issued by this court to have the names of these plaintiffs printed upon said primary election ballot. That said county election board of Oklahoma county have failed and refused and will unless compelled by this court to issue to each of the plaintiffs herein a certificate of nomination in due and proper form showing that each of said plaintiffs is the duly elected nominee of the Republican party for the position sought as hereinbefore stated."

The defendants in their response admit the truth of all the above facts pleaded by the plaintiffs.

The county election board of Oklahoma county, in justification of their refusal to file the names of the plaintiffs on the regular county primary ballot to be voted on by the Republican electors of Oklahoma county, plead section 2 of chapter 98, Session Laws 1927, the same being House Bill 301. Section 2 thereof being as follows:

"In all primary elections where candidates for political party nominations, wherein candidates are unopposed, the state central committee, as to state offices, and the county central committee, as to county offices of the respective political party or parties in which there may be unopposed candidates, shall, within ten days after the close of the filing period for such office, meet and declare each of such unopposed candidates the party

nominee for the office for which he or she, respectively, filed, and shall forthwith file such declaration in behalf of their party with the secretary of the State Election Board, or with the county election board as may be proper. The secretaries of the respective election boards shall receive such declaration of the respective party committees, the election board shall compare the same with its filings, and if it be found to be accurate, the respective election board, or boards, shall declare such candidate to be the party nominee for the office for which such candidate has filed and is unopposed, whereupon all names of all unopposed candidates so certified and found correct by said boards shall be left off the primary ballot, and it shall be the duty of said State Election Board, or county election board, respectively, to issue to each of said unopposed candidates a certificate of nomination in due and proper form at such time as is provided by law."

The plaintiffs maintain that said provision is unconstitutional and void.

The county election board of Oklahoma county contends that the primary provision of the state Constitution does not inhibit the Legislature from amending the primary election law so that a vain and useless act may not be required of the election officials, and where said amendment in no way affects the rights and choice of the electors of the respective political parties to cast their votes for the candidate of their choice at a primary election.

It is a part of the political history of Oklahoma that a very large majority of the membership to the Constitutional Convention were elected on promise to assist in writing into the Constitution of the state a provision whereby the electors of the respective political parties would be given the right and privilege of balloting on candidates who offered themselves for the nomination by political parties to the various political offices.

In keeping with the promise to provide for a mandatory primary, the delegates to the State Convention inserted in the Constitution section 5, article 3, thereof, which reads as follows:

"The Legislature shall enact laws providing for a mandatory primary system, which shall provide for the nomination of all candidates in all elections for state, district, county, and municipal offices, for all political parties, including United States Senators: provided, however, this provision shall not exclude the right of the people to place on the ballot by petition any nonpartisan candidate."

It is not difficult to understand what was meant in providing that the Legislature should enact laws providing for mandatory primary system. Especially is the meaning clear in the light of history which surrounded the writing of the Constitution of this state.

By virtue of the last-quoted section of the Constitution, the Legislature was directed to pass all needful legislation providing for a mandatory primary system which should provide for the nomination of all party candidates. The mandatory primary system is understood by the people of this state, under our Constitution, to mean that where there is a contest for the nomination between two or more candidates for a particular office from the same political party, such opposing candidates are entitled to have their names submitted to the electors of their respective parties, and such electors have the constitutional right and privilege of choosing and selecting their choice from such candidates by casting a direct vote or ballot therefor.

Under no circumstances, where there are two or more candidates offering themselves for the nomination for a particular office of the same political party, can the Legislature deprive the electors of the respective political parties from casting a direct ballot or vote for their choice, and where two or more candidates present themselves for such nomination, no legislation, under the said provision of the Constitution, can be enacted substituting or delegating any of the rights and privileges of the electors to an individual, body or convention, in making a choice or selection from two or more candidates for the nomination of a political office by a political party.

Under section 5, article 3, of the Constitution the Legislature would have the right to pass all reasonable regulatory rules to vitalize the spirit and meaning of the said primary provision of the Constitution.

Under section 2, chapter 98, Session Laws 1927, supra, the Legislature did not take away from an unopposed candidate any right that he might have obtained had his name been printed upon the primary ballot and submitted to the electors of the candidate's political party. Neither do the electors suffer the loss of any political or other rights because the name of such unopposed candidate was not printed upon the ballot to be voted upon at an ensuing primary election, for the reason that the electors of the respective parties in the case of an unopposed can-

didate for the nomination is not afforded an opportunity for the expression of a choice between two or more candidates at a primary election, therefore, neither the unopposed candidate nor the electors are in any manner affected in their rights and privileges by virtue of section 2, chapter 98, supra.

Section 2, chapter 98, supra, in our judgment, strengthens the direct primary law by providing a method whereby an unopposed candidate may receive a certificate of nomination from the election board as would entitle him to have his name printed upon the final election ballot, as nominee of his political party, for the particular office which the candidate offers himself.

In our judgment section 5, article 3, of the Constitution is sufficiently broad to enable the Legislature to enact a provision whereby an unopposed candidate to a particular office from his political party may receive a certificate of nomination without the necessity of having the name of such unopposed candidate being printed upon the primary ballot at the ensuing primary election.

We do not think that the rules of law and reason would require even an intensive democracy to follow a vain and useless method as practiced by the election officials and the electors prior to the passage of the act here in question.

It is insisted by the plaintiffs that the act here challenged is in conflict with sections 6093, 6101, 6110, and 6125, O. O. S. 1921, and said sections are not repealed by said act, unless by implication. We do not think that the sections above referred to are in conflict with the act in question.

Section 2, chapter 98, Session Laws 1927, simply makes an exception to be applied to an unopposed candidate governing the regular statutory method of nominating candidates in a party primary, and in no manner affects the former provisions of the statutes relating to opposed candidates in a party primary election.

It is contended by the plaintiffs that section 2, chapter 98, supra, transfers the right of choice and selection of party candidates from electors of political parties to that of the State Central Committee in case of a state candidate, and the county central committee in case of a county candidate. We cannot concur in this argument for the reason that no choice or selection between

candidates for party nomination is bestowed upon the said central committees.

It is provided in said act that within ten days after the filing closes in which candidates may file their application for party nomination, it is then ascertained that a candidate for the nomination of a particular office by a political party is unopposed, it then becomes the duty of the central committee of the party to which the candidate belongs to file with the secretary of the proper election board its certificate finding that such candidate is unopposed.

The election board to which the return of the central committee had been made must then compare the findings made in said return with the filings made for party nominations of such political party, and if said board then finds that said candidate does not have an opponent, it then becomes the duty of said board to issue a certificate of nomination to said unopposed candidate. The procedure thus provided for is a protection against error, fraud, or collusion.

Neither the party central committee nor the election board have any choice or discretion in selecting or determining the choice between candidates. They are wholly controlled by the facts as they appear from filing records of the secretary of the election board. If a candidate for a party nomination has an opponent, he, together with his opponent, is placed on the primary ballot. If a candidate has no opponent, then it becomes the mandatory duty of the party central committee to make only such finding of fact as shown by the record in the office of the secretary of the election board, and should such central committee or the election board fail to act on the filing of such unopposed candidate in a party primary, then said candidate would have a cause of action to force his name upon the ballot as a nominee of his respective political party for the ensuing general election.

It is contended by the plaintiffs that the Legislature cannot delegate to the central committee of political parties certain powers and duties. The courts of this state have recognized the separate entity of the several political parties in the state.

In the case of Ex parte Wilson, 7 Okla. Cr. 610, 125 Pac. 739, in syllabus paragraphs Nos. 3, 5 and 9, it is said:

"This provision of the Constitution recognizes political parties for the purpose of nominating candidates for elective offices, and contemplates that only electors who are members of political parties shall participate in primary elections for the selection of candidates for the respective parties, and then vote only the ballot of the party of which they are members.

"Article 3, sections 1, 4a, and 7 (secs. 42, 46 and 49, Williams' Const.), prescribing the qualifications of electors and guaranteeing then right to vote, applies to the election of public officers, and not to the selection of party nominees at a primary election. A 'primary election' is one for the nomination of candidates of the respective political parties by the members thereof.

"Self-preservation is the right of political parties, as well as individuals. It is for the party to nominate; for the people to elect."

As hereinbefore stated, section 2, chapter 98, Session Laws 1927, supra, bestowed upon the central committees of the several political parties only ministerial duties, and a failure to perform these duties would be subject to relief in court on part of an unopposed candidate.

It is also contended that section 2, of said act in question, is special legislation for the reason that it does not include unopposed candidates for United States Senators, Congressmen, and offices less than county offices, and being special legislation, is therefore unconstitutional.

When the act in question is read together with additional regulations contained in the statutes relating to primary elections, said act must be clearly understood as applying to every kind and character of office for which it was necessary to secure a party primary nomination prior to the adoption of said act, and the following authorities are cited to sustain this proposition:

State ex rel. Miller v. Blaisdell (N. D.) 159 N. W. 400, syl. 5:

"The primary election law should be liberally construed to effectuate its remedial purposes."

School District No. 17 v. Zediker, 4 Okla. 599, 47 Pac. 482:

"A statute will be liberally construed for the purpose of carrying out the legislative intent."

Brown v. Woods, 2 Okla. 601, 39 Pac. 473:

"That which is within the reason, purpose, and intention of a statute is as much a part of it as if it were within the letter of the legislative act."

Trustees v. Hooton, 53 Okla. 530, 157 Pac. 293, syl. 2:

"Where the plain intent and meaning of the Legislature can be gathered from the context of a statute, in order to give the effect to such intention, the court, in construing such statute, may substitute or supply a necessary and proper word to attain this result." See, also, pages 296 and 297.

De Graffenreid v. Iowa Land & Trust Co., 20 Okla. 687, 95 Pac. 624, syl. 7:

"In arriving at the intent of the Legislature in enacting a statute, not only must the whole statute and every part of it be considered, but where there are several statutes in pari materia they are all, whether referred to or not, to be taken together and one part construed with another in the construction of any material provision. Statutes are in pari materia which relate to the same person ' or thing or to the same class of persons or things."

Town of Grove v. Haskell, 31 Okla. 75, 116 Pac. 805, syl. 1:

"When the literal enforcement of a statute would result in great inconvenience or lead to consequences which are absurd and which the Legislature cannot be held to have contemplated, the courts are bound to presume that such consequences were not intended, and to adopt a construction which shall promote the ends of justice, and avoid the absurdity." Board of Education v. Woodwarth, 89 Okla. 192, 214 Pac. 1077.

Chicago, R. I. & P. R. Co. v. State, 90 Okla. 173, 217 Pac. 147:

"Every statute should have a reasonable, sensible construction, in preference to one which renders it, or a substantial part of it, useless or deleterious." Oklahoma Nat. Gas Co. v. Corporation Commission, 90 Okla. 84, 216 Pac. 917.

Oklahoma Coal Co. v. Atkinson, 121 Okla. 59, 247 Pac. 366:

"It is a cardinal rule that, in the construction of statutes, the legislative intent must govern, and to arrive at the legislative intent, the entire act must be considered, together with all other enactments upon the same subject; and, when the intention of the Legislature can be gathered from the entire statute, words may be modified, altered, or supplied to give the statute the force and effect which the Legislature intended."

Tinker v. Modern Brotherhood of America, 13 Fed. (2nd.) 130:

"A statute should be construed with reference to the object to be accomplished by it."

Brown v. Miller, 89 Okla. 287, 215 Pac. 748:

"The rule is established that a thing within the intention is regarded as within the statute, though not within the letter; and a thing within the letter is not within the statute, unless within the intention."

Section 6101, C. O. S. 1921, provides:

"Any person desiring to become a candidate before primary elections for a political party nomination shall petition the proper officials, as hereinafter provided, to have his name so printed upon such political party ticket and this provision shall apply to nonpartisan candidates. Such petition shall be filed as hereinafter provided and shall be signed by the candidate; it shall give his place of residence, his postoffice address, and shall name the party before which he desires to become a candidate and date of the election. All nominating petitions for presidential electors, United States Senators, Representatives in Congress, state officers, members of the Senate and House of Representatives, district judges, and for all other offices for which the electors of the entire state, or subdivision thereof greater than a county, are entitled to vote, shall be filed with the Secretary of the State Election Board. All nominating petitions for county and township officers or offices for which the electors of a subdivision of a county are entitled to vote, shall be filed with the secretary of the county election board."

Section 2, chapter 98, Session Laws 1927, supra, must be read in light of the above provision, which enumerates the entire class of officers to which candidates in the primary must submit their names for the consideration of the electors of their respective parties.

In the case of Dabney v. Hooker, 121 Okla. 193, 249 Pac. 381, this court held:

"Where one statute adopts the particular provisions of another by specific reference, it adopts the second statute as it exists at the time of adoption, and not subsequent amendments of it. But where one statute adopts, not another particular statute or section, but the general law governing a subject, the reference will be regarded as including not only the law in force at the date of adopting act, but also the law in force when action is taken, or proceedings are resorted to."

The right of the state to regulate the manner and procedure for nominating candidates for membership in the federal Congress has been recognized. In the case of Newberry v. United States, 256 U. S. 232, the Supreme Court of the United States held:

"The power of Congress over elections of Senators and Representatives has its source

in section 4 of article 1 of the Constitution, which provides: 'The times, places, and manner of holding elections for Senators and Representatives, shall be prescribed in each state by the Legislature thereof; but the Congress may at any time by law make or alter such regulations, except as the places of choosing Senators.' P. 247.

"The power to control party primaries for designating candidates for Senate is not within the grant of power 'to regulate the manner of holding elections' (art. 1, sec. 4),—neither within the fair intendment of the words used nor the meaning ascribed to them by the framers of the Constitution; it is not necessary in order to effectuate the power expressly granted (art. 1, sec. 8, cl. 18); and its exercise would interfere with purely domestic affairs of the state and infringe upon liberties reserved to the people. P. 256."

We, therefore, hold the Legislature was acting within the purview of its constitutional authority when it enacted section 2, chapter 98, Session Laws 1927, and the writ of mandamus is denied.

MASON, V. C. J., and PHELPS, HUNT, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 20 C. J. pp. 112, 113, §109. (2) 20 C. J. p. 117, §119. (4) 36 Cyc. p. 1147. (5) 20 C. J. p. 113, §110.